Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,441-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE:  MEDICAL REVIEW PROCEEDINGS
CHERYL D. ARMENIO

* * * * *

On Application for Writs from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 173,927

Honorable Michael Nerren, Judge

* * * * *

| | |
|---|---|
| BRADLEY, MURCHISON, KELLY & SHEA, LLC<br>By: Dwight C. Paulsen, III<br>    Phiyen H. Phan | Counsel for Applicant,<br>Twyla C. Hurst |
| CHERYL D. ARMENIO | In Proper Person,<br>Respondent |

* * * * *

Before PITMAN, STONE, and MARCOTTE, JJ.

**PITMAN, C. J.**

Applicant Twyla C. Hurst sought supervisory review of the trial court's ruling denying her exception of prescription in this suit for medical malpractice. The writ was granted to docket. For the following reasons, the writ is granted, the judgment of the trial court is reversed, and the exception of prescription is sustained.

## FACTS

Cheryl Armenio, proceeding pro se, filed a medical malpractice complaint on April 4, 2023, and alleged that Twyla Hurst was her primary care doctor for eight years and that during that time, Hurst tested her for Hepatitis C because of elevated liver enzymes, but, on more than one occasion, told her that she did not have the condition. She alleged that Hurst referred her to a gastroenterologist ("G.I.") and that on April 21, 2022, she was diagnosed with chronic liver disease as a result of untreated Hepatitis C. The Patient's Compensation Fund ("PCF") advised her that her complaint was deficient because she failed to request formation of a medical review panel, failed to provide the dates of the alleged malpractice and failed to return the corrected panel request within 45 days.

On May 22, 2023, Armenio filed a supplemental complaint alleging that Hurst was her primary care doctor from July 1, 2016, to January 31, 2022. She claimed that she asked to be tested for Hepatitis C on her first visit, but was told she did not have it. She had received a letter from LSU Hospital referring her to the Hepatitis C Clinic, which she told Hurst about on September 8, 2020. Hurst told her that she did not have Hepatitis C but asked her to sign a release form so she could get her records from LSU. Armenio claimed she did not hear from Hurst again until January 12, 2022,

when Hurst again assured her that she did not have Hepatitis C. However, because she did have elevated liver enzymes, Hurst referred her to a G.I., Amy Lewing, FNP-C, (nurse practitioner) on March 8, 2022. Armenio was diagnosed with Hepatitis C on April 21, 2022.

The PCF again advised Armenio that her complaint was deficient because she failed to request formation of a medical review panel and that she needed to return the corrected panel request within 45 days. Armenio failed to do so, and the PCF sent a second request on October 10, 2023. On October 19, 2023, Armenio filed a supplemental complaint requesting the formation of a medical review panel. Thereafter, the PCF notified Armenio that Hurst was a qualified health care provider.

Armenio filed a supplement to her complaint, consisting of a May 31, 2019, clinical note from "OLSC ACC Infectious Disease"[1] stating: "Patient needs labs prior to scheduling an appointment in Hep C clinic. Unable to contact patient via telephone; letter mailed requesting patient to call to schedule appt."

On October 3, 2024, Hurst filed an exception of prescription, asserting that Armenio's claim was prescribed because the medical malpractice complaint was not filed within one year from the date she was diagnosed with Hepatitis C or within one year from the date of the discovery she had Hepatitis C and agreed to enter treatment. She attached the certified medical records from Bossier Family Medical Clinic, Christus Highland and Ochsner LSU.

_____

[1] This office is one at Oschner Louisiana State University, but the letterhead on which the clinical note is written is only identified the office by initials.

A summary of the medical records establishes the following timeline:

- On April 25, 2017, Armenio was seen by Hurst for hypertension, which was first diagnosed seven years earlier. No substance abuse history was noted.

- On May 23, 2017, Hurst ordered blood work, which showed Armenio's AST and ALT were within normal limits. Armenio was notified of the results by phone on May 31, 2017.

- On October 3, 2017, Armenio had a follow-up visit with Hurst regarding hypertension, anxiety, depression and insomnia. Hurst ordered blood work, which showed Armenio's AST and ALT were within normal limits. The clinic was unable to notify Armenio of the results because she did not have a phone.

- On June 27, 2018, Armenio saw Hurst for a toothache, and Hurst recommended that Armenio schedule an appointment with an oral surgeon as soon as possible.

- On June 16, 2020, Armenio had a follow-up visit with Hurst regarding hypertension, lab work and Tdap immunization. Hurst ordered blood work, which showed Armenio's AST and ALT were slightly elevated. The next day, Armenio was advised of the results and told to "avoid APAP and ETOH due to elevated AST/ALT" and to repeat labs in three months.

- On December 16, 2020, Armenio had a follow-up visit with Hurst regarding hypertension. Hurst ordered blood work, which showed Armenio's AST and ALT were elevated (higher than the previous lab report). Hurst recommended a referral to a G.I. clinic. However, the records contain notes that the clinic left messages for Armenio to call back for the results on December 17 and 18, 2020.

- On December 2, 2021, Armenio went to the Emergency Room at Christus Highland with complaints of hand pain. The record notes that although Armenio denied any drug use, her urinalysis was positive for methamphetamines.

- On January 11, 2022, Armenio saw Hurst with continued complaints of hand pain. Hurst ordered blood work, which showed Armenio's AST and ALT continued to be elevated and that her Rheumatoid Factor was mildly elevated. Armenio was advised of the results on January 12, 2022, and was referred to a G.I. specialist and a rheumatologist.

3

- On March 8, 2022, Armenio was seen by Amy Lewing, NP, at the gastroenterology clinic at Ochsner LSU. Armenio reported no complaints or symptoms. Armenio admitted to a "long history of illicit drug use," but claimed she had stopped three years prior.

- Lewing ordered lab work, which came back positive for Hepatitis C antibodies.

- On March 9, 2022, Lewing called Armenio and left a message notifying her of the results and that further blood work was needed. Lewing also advised Armenio via a patient portal message as follows:

  > Hi! Your Hepatitis C antibody came back positive. This can mean two things: 1. You had a past infection and cleared it on your own. 2. You have an active Hepatitis C infection that needs to be treated. I have ordered more labs that can help us see if the infection is active. Give the clinic a call at 626-1960 and I will tell you where to go to get labs.

- The March 25, 2022 medical record indicates patient tested positive for Hepatitis antibodies. The progress note from the same date states: "Patient called clinic and [stated] she was ready for Hep C treatment."

- At the hearing on the exception of prescription, Armenio established that she did not have the blood work suggested by Lewing until April 14, 2022.

- On April 21, 2022, she went to a rheumatologist who informed her that she had tested positive for Hepatitis C.

In the exception of prescription, Hurst argued that although Armenio alleged that she was diagnosed with Hepatitis C on April 21, 2022, the certified medical records establish that Armenio knew she had Hepatitis C on March 9, 2022, when she was advised of her positive antibody test, or on March 25, 2022, when she was prepared to begin treatment, more than one year before the complaint was filed on April 4, 2023. Further, Hurst argued that Armenio had constructive knowledge necessary to start the running of prescription more than one year before the complaint was filed. Based on

4

the May 31, 2019 clinical note that Armenio provided to the PCF as a supplement to her complaint, Armenio was seeking an appointment in the Hepatitis C Clinic almost four years before the complaint was filed.  Hurst referred Armenio to the G.I. Clinic on December 17, 2020, and January 12, 2022, based on elevated AST and ALT levels.  She argued that this information was sufficient to incite curiosity or put Armenio on guard and call for inquiry as to her Hepatitis C status.

Armenio did not file an opposition to the exception of prescription.  A hearing was held on February 11, 2025, at which the trial court, aware that she did not have counsel, explained certain matters concerning prescription and then allowed her to take part in the argument.  The trial court took the matter under advisement and then signed a judgment denying Hurst's exception of prescription.

The trial court found that the March 9, 2022 message in Armenio's medical records did not commence the running of prescription because it did not put Armenio on notice that she had been diagnosed with Hepatitis C.  Instead, the message informed Armenio that more testing was needed to determine whether there was an active infection, which is not the same as a diagnosis.  Further, the trial court found that the March 25, 2022 progress note did not definitively show that Armenio was diagnosed with Hepatitis C more than one year prior to April 4, 2023, as it is unclear whether she needed "Hep C treatment" at that time.  The trial court noted that at the hearing, Armenio stated she did not receive the additional lab work referenced in the March 9, 2022 message until April 14, 2022, and did not receive the results and a formal diagnosis of Hepatitis C until April 21, 2022.  Because the medical records do not show that Armenio had a definitive

diagnosis more than one year prior to the filing of the complaint, the trial court determined that the complaint was timely.

Hurst filed a notice of intent to seek writs from the judgment denying the exception of prescription. However, the trial court denied the request for a return date on the basis that the request was premature because Hurst had already filed a motion for a new trial, which had not yet been heard or ruled upon. Hurst filed a motion in this court to set an extended writ return date, which was granted, and this writ was timely filed on March 17, 2025. On May 7, 2025, this writ was granted to docket.

## DISCUSSION

Hurst contends that the trial court erred in denying her exception of prescription and argues that Armenio's malpractice complaint is prescribed on its face because it was not filed within one year of the dates of the alleged malpractice, which span from July 1, 2016, to January 31, 2022. She also contends that the complaint does not allege any delay in discovery or any allegations relative to the reasonableness of that delay. As such, Hurst claims that the burden should have shifted to Armenio to prove that her claim was not prescribed. Armenio did not file an opposition in the trial court and simply claimed that she was not diagnosed with Hepatitis C until April 21, 2022.

Hurst argues that the trial court improperly placed the burden on her to show that Armenio had a definitive diagnosis more than one year prior to the filing of the complaint. She contends that the trial court misapplied the discovery rule and that the facts alleged by Armenio and the certified medical records establish that Armenio had enough information to excite curiosity, place her on guard and call for inquiry as to whether malpractice

6

had occurred more than a year before April 4, 2023.  Hurst notes that regardless of any further testing needed to determine whether this was an active infection or a prior infection, Armenio was specifically on notice by March 9, 2022, that she was either presently or previously infected with Hepatitis C.  She also claims that Armenio's documented failure to follow her follow-up recommendations and delays in following through with the referral to a G.I. specialist in December 2020 based on elevated liver enzyme levels render any delay in learning of her Hepatitis C diagnosis unreasonable.

Armenio has not filed an opposition to the writ application; and, thus, there are no arguments to consider regarding the exception of prescription.

Our jurisprudence reflects that the standard of review of a judgment pertaining to an exception of prescription turns on whether evidence is introduced at the hearing of the exception.  La. C.C.P. art. 931 expressly allows "evidence [to] be introduced to support or controvert [a peremptory exception] pleaded, when the grounds thereof do not appear from the petition." *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-00061 (La. 10/10/21), 333 So. 3d 368.  If no evidence is submitted at the hearing, the exception must be decided upon the facts alleged in the petition with all of the allegations accepted as true.  *Id.*  In that case, the reviewing court is simply assessing whether the trial court was legally correct in its finding.  *Id*. When evidence is introduced at the hearing, a court need not accept the allegations of the petition as true, and the lower court decisions are to be reviewed under a manifest error-clearly wrong standard of review.  *Id*.  A caveat to this rule is that, even when evidence is introduced, when there is no dispute regarding material facts, the reviewing court is to apply a de novo

7

standard of review and give no deference to the trial court's legal conclusions. *Id.*

A medical malpractice claim must be filed within a year of the alleged malpractice or the discovery of the malpractice, as set forth in La. R.S. 9:5628(A), which provides:

> No action for damages for injury or death against any physician, … arising out of patient care shall be bought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

La. R.S. 9:5628(A) provides two periods for filing a malpractice action–either one year from the date of the alleged act, omission or neglect, or one year from the date of discovery of the act, omission or neglect, provided that no more than three years have elapsed from the date of the alleged act, omission or neglect. The second period is a codification of the fourth category of contra non valentem that occurs where the cause of action is not known or reasonably knowable by the plaintiff and when the damages are not immediately apparent upon commission of the alleged malpractice. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So. 2d 502; *Johnson v. Ruston Louisiana Hosp. Co., LLC*, 54,258 (La. App. 2 Cir. 8/10/22), 345 So. 3d 464, *writ denied*, 22-01378 (La. 11/22/22), 350 So. 3d 503.

In *Campo v. Correa, supra*, the Louisiana Supreme Court explained:

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite

8

attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was *reasonable* for the plaintiff not to recognize that the condition might be treatment related. The ultimate issue is the *reasonableness* of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. [Internal citations omitted.]

The law of prescription does not require that the patient be informed by a medical practitioner or an attorney of possible malpractice before the limitation period begins to run. *Powell v. St. Francis Med. Ctr., Inc.*, 52,462 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1184. Prescription does not run as long as it is reasonable for a plaintiff not to recognize that the injury may be related to treatment. *Id.* When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or outcome may be the result of improper treatment and there is no effort by the health care provider to mislead or cover up information which is available to plaintiff through inquiry, then the cause of action is reasonably knowable to plaintiff. *Id.* Inaction by a plaintiff for more than one year under such circumstances is not reasonable. *Id.* The plaintiff's ignorance of his cause of action cannot be attributable to his own willfulness or neglect, as a plaintiff is deemed to know what he could have learned by reasonable diligence. *Johnson v. Ruston Louisiana Hosp. Co., LLC, supra.*

Ordinarily, the party pleading prescription bears the burden of proving that the claim has prescribed; however, when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. *Higgins v. Russell*, 55,624 (La. App. 2 Cir. 5/22/24), 386 So. 3d 1236. A plaintiff is then imputed with whatever knowledge a reasonable inquiry or investigation would reveal. *In re Med. Rev. Panel of Heath*, 21-01367 (La. 6/29/22), 345 So. 3d 992. A petition is not prescribed on its face if it is filed within one year of discovery and particularly alleged facts show that the patient was unaware of malpractice before that date, so long as the filing delay was not willful, negligent or unreasonable. *Id.*

Based on the allegations in the original and supplemental complaints, the dates of the alleged malpractice span from July 1, 2016, to January 31, 2022, while Hurst was Armenio's primary care doctor. The original medical malpractice complaint, alleging a delayed diagnosis of Hepatitis C, was filed on April 4, 2023, more than one year later. To the extent that Armenio's allegation that she was diagnosed with Hepatitis C on April 21, 2022, sufficiently states the date of her discovery of the malpractice, she failed to allege that she was unaware of the malpractice prior to that date, or provide factual allegations regarding the reasonableness of the delay in discovery. Thus, her complaint is prescribed on its face and the burden of proof shifted to her to show that her claim had not prescribed. She failed to prove she discovered the possible malpractice less than one year before the complaint was filed and also failed to file an opposition in response to the exception of prescription.

A definitive diagnosis is not required to start the running of prescription, and Hurst supported her exception with medical records

showing that Armenio had constructive notice of the possible malpractice more than one year before the complaint was filed.  Lab work showed she had elevated liver enzymes in June 2020 and in December 2020.  Hurst recommended a referral to a G.I. clinic, but Armenio never followed up with that recommendation until January 2022, when lab work showed even more elevated enzyme levels.  After having more lab work done, she was notified on March 9, 2022 via voicemail and a patient portal message that she was positive for Hepatitis C antibodies, but that additional lab work was needed to determine if it was a past or active infection.  Armenio even called the G.I. clinic on March 25, 2022, stating she was ready for "Hep C treatment."

These facts establish that Armenio had sufficient information to excite her attention and put her on guard to call for inquiry as to a possible missed diagnosis by March 25, 2022 at the latest.  Thus, her malpractice complaint, filed on April 4, 2023, was prescribed and the trial court erred in denying Hurst's exception of prescription.  For these reasons, the assignment of error has merit.

## CONCLUSION

For the foregoing reasons, the writ filed by Applicant Twyla Hurst is granted, and the judgment of the trial court denying the exception of prescription is reversed, and the case is dismissed.  Costs are assessed against Respondent Cheryl D. Armenio.

**WRIT GRANTED.  JUDGMENT REVERSED. CASE DISMISSED WITH PREJUDICE.**

11